UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE DESCRIBED AS:<br><br>iPhone Model: A1586<br>FCC ID: BCG-E2816A<br>IMEI: 356954068457488<br><br>**Located at the** DEA Evidence Room<br>36 E. 7th Street, Suite 1900<br>Cincinnati, Ohio | CASE NO. 1:17MJ-539<br><br>**UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Philip V. Brown, a Special Agent with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since August 2010. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18, of the United States Code.

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 19-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled

substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have also received additional formal training from DEA to include the Basic Telecommunications Exploitation Program and the Internet Telecommunications Exploitation Program, which were specifically designed to assist agents in identifying and subsequently exploiting telephonic and internet related devices utilized in the commission of a Controlled Substance Act (CSA) violation.

4. As a DEA agent, I have participated in over 50 criminal investigations and in the execution of over 50 search warrants seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code). These warrants covered the search of locations to include: residences of drug traffickers and their co-conspirators/associates; drug manufacturing operations; and, stash houses used as storage and distribution points for controlled substances, as well as the search of Facebook profiles and email accounts from service providers such as Yahoo! and Google.

5. Through my training and experience, I know that those involved in the illegal sale and distribution of narcotics often store in their cell phones and mobile devices, contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. Often the information stored in the contact list may be in the form of a code to conceal the true identity of the contact.

6. Through my training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of cellular telephones or use of multiple telephones or other devices, to avoid detection by law enforcement.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. The property to be searched:
    a. Subject Telephone: iPhone Model: A1586

    FCC ID: BCG-E2816A
    IMEI: 356954068457488

9. The subject telephone was located following the arrest of Ari HODGES from 11755 Norbourne Avenue Apartment 114; referred hereinafter to as the "Subject Telephone." The Subject Telephone is currently in the custody of DEA Cincinnati.

10. The applied-for warrant would authorize the forensic examination of the Subject Telephone for the purpose of identifying electronically stored data particularly described in Attachment B.

## SUMMARY OF INVESTIGATION

11. The Drug Enforcement Administration (DEA) is investigating an organization engaged in a conspiracy involving the suspected distribution of controlled substances, more specifically, heroin and fentanyl, Schedule I and Schedule II controlled substances, in violation of, inter alia, 21 U.S.C. §§ 841(a)(1) and 846.

12. The DEA first learned of Ari HODGES during its investigation of the Keysean DICKEY DTO. The DICKEY DTO involves a conspiracy of the distribution of controlled substances, more specifically heroin and fentanyl. HODGES has been identified as a fentanyl distributor for the DICKEY DTO.

3

13. On May 30, 2017. United States District Judge Susan J. Dlott signed a court order authorizing the interception of wire and electronic communications sent to and from Keysean DICKEY's mobile phone, 513-238-1049. Pursuant to the wiretap, I learned that HODGES was using at least two different phones to communicate with DICKEY.

14. On June 21, 2017, United States Magistrate Judge Karen L. Litkovitz signed a complaint affidavit and arrest warrant for HODGES.

15. On June 26, 2017, law enforcement arrested HODGES and located the Subject Telephone with HODGES. The Subject Telephone was seized by TFO Duncan and processed according to DEA policies and procedures. The Subject Telephone was maintained by the DEA Cincinnati Resident Office. Because this DTO is known to use numerous mobile phones in furtherance of the drug-trafficking conspiracy, and because HODGES has had pertinent intercepted conversations with DICKEY on at least two separate mobile phones, I believe that probable cause exists to search the Subject Telephone and that evidence indicative of a drug-trafficking conspiracy will be located.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing

4

names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

5

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that these types of devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Nature of* examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of* execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Telephone described in Attachment A to seek the items described in Attachment B.

7

## REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Philip V. Brown
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 10th day of July, 2017

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is:

iPhone Model: A1586
FCC ID: BCG-E2816A
IMEI: 356954068457488

hereinafter the "Subject Telephone."

The Subject Telephone is currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Subject Telephone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Subject Telephone described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Ari HODGES, Keysean DICKEY** and other yet unknown individuals including:

   a. Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording schedules or travel;

   f. any and all stored telephone numbers;

   g. any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   h. Any and all emails, sent, received, delete, draft and/or saved;

   i. any and all voicemails;

   j. any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   k. Any and all data retrieved from Apps on the device;

   l. any and all entries made in a calendar and/or notebook feature;

   m. any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2. Evidence of user attribution showing who used or owned the Subject Telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.